MADISON v. SUN LIFE ASSUR. CO. OF CANADA (BAKER et al., Interveners).

No. 17171.

Court of Appeal of Louisiana. Orleans.

Oct. 16, 1939.

Hugh Morrison, of New Orleans, for appellants Johney Baker and Hattie Washington.

John T. Charbonnet, of New Orleans, for appellant Geddes & Moss Undertaking & Embalming Co., Limited.

M. C. Scharff and J. I. McCain, both of New Orleans, for appellant Bessie Walker.

Sydney Parlongue, of New Orleans, for appellant A. J. Hollander.

Lemle, Moreno & Lemle and Charles Kohlmeyer, Jr., all of New Orleans, for appellee Sun Life Assur. Co. of Canada.

C. C. McCann and Adam Harper, both of New Orleans, for appellee Henrietta Madison.

John R. Land, Jr., of New Orleans, for appellee Richard Matthews.

McCALEB, Judge.

This is a contest over the proceeds of a $1,000 insurance policy issued by the Sun

Life Assurance Company of Canada on the life of Rogers Matthews. The undisputed facts of the case are as follows:

The Sun Life Assurance Company of Canada entered into an arrangement with the Illinois Central Railroad Company whereby it issued its group policy No. 1795 which empowered all of the employees of the Illinois Central System to have their lives insured at a minimum cost. On October 26, 1933, Rogers Matthews, then an employee of the Illinois Central System, applied for and was issued a $1,000 certificate of insurance on his life under the group plan above described. At the time of the issuance of the insurance policy, he named his concubine, Bessie Walker, as his beneficiary. Later on August 13, 1935, upon his application, the beneficiary on the policy was changed from Bessie Walker to Johney Baker and Hattie Washington "share and share alike". Thereafter on September 1, 1937, he effected another change in beneficiaries by directing the insurance company to pay the proceeds to Bessie Walker and Richard Matthews "share and share alike or to the survivor".

On January 14, 1938, Rogers Matthews died. After his death, Bessie Walker, one of the two last named beneficiaries, assigned all her right, title and interest in the proceeds of insurance to Geddes & Moss Undertaking & Embalming Company, Ltd., for good and valuable consideration. On February 28, 1938, one Henrietta Madison, alleging that she was the surviving spouse of Rogers Matthews, instituted the present proceedings against the Sun Life Assurance Company of Canada, in which she claimed the avails of the insurance.

The insurance company, appearing by way of answer and reconventional demand, conceded its liability under the policy and, taking advantage of the provisions of Act No. 123 of 1922, converted the suit into an interpleader action in which it set forth that there were numerous claimants to the insurance fund. It deposited the proceeds in the registry of the court, caused all of the interested parties to be cited to assert their rights and prayed that it be discharged from any further liability in the premises. The following persons appeared in the case and made claim to the fund: (1) Henrietta Madison, surviving spouse of the insured; (2) Johney Baker and Hattie Washington, who were beneficiaries under the policy prior to the designation of Bessie Walker and Richard Matthews;

(3) Bessie Walker, claiming one-half of the proceeds as one of the two beneficiaries of the policy at the time of the insured's death; (4) Richard Matthews, the illegitimate minor child of the insured, appearing through John R. Land, Jr., his tutor. ad hoc, claiming one-half of the avails as one of the two lawful beneficiaries; (5) Geddes & Moss Undertaking and Embalming Company, Ltd., claiming one-half of the proceeds under an assignment from Bessie Walker dated January 14, 1938, and (6) A. J. Hollander, attorney of the New Orleans Bar, a creditor of Bessie Walker, who claims $250.00 of whatever amount she is awarded.

After hearing evidence on the claims of the above mentioned litigants, the trial court rendered judgment in which it distributed the fund on deposit in the following manner:

| | |
|---|---:|
| Richard Matthews | $ 500.00 |
| Bessie Walker | 127.50 |
| Henrietta Madison | 131.70 |
| Geddes & Moss Undertaking & Embalming Co., Ltd. | 50.00 |
| A. J. Hollander | 150.00 |
| Costs of Henrietta Madison and Bessie Walker | 40.80 |
| | |
| Total deposit | $1000.00 |

The court dismissed the intervention of Johney Baker and Hattie Washington and discharged the Sun Life Assurance Company of Canada from any further liability under the policy.

Johney Baker, Hattie Washington, Bessie Walker, Geddes & Moss Undertaking and Embalming Company, Ltd., and A. J. Hollander have appealed to this court from the judgment rendered below.

█ The real contest presented to us by these appeals chiefly concerns the conflicting claims of Bessie Walker, Geddes & Moss Undertaking and Embalming Company, Ltd., and A. J. Hollander. The award of the sum of $500 by the trial judge to Richard Matthews as one of the last two named beneficiaries on the policy, representing one-half of the insurance proceeds, has not been assailed by any of the parties appellant in this court and, in fact, the correctness of that part of the judgment must be readily conceded.

█ It is also obvious that the claims of Johney Baker and Hattie Washington are not well founded. They were not beneficiaries under the policy at the time of the

insured's death and the judge correctly dismissed their intervention.

■ The claim of Henrietta Madison, surviving spouse of the insured, is without merit. Her demand is based upon the theory that Bessie Walker murdered the insured and that it would be inimical to public policy to permit her to receive any portion of the insurance avails. No proof was tendered by the claimant to sustain her contention and, consequently, her intervention should have been dismissed on that ground alone. The judgment awarding her the sum of $150 is clearly erroneous.

Bessie Walker claims $500 or one-half of the policy proceeds as one of the two legal beneficiaries under the policy. Ordinarily, she would be entitled to recover this sum but it appears that, shortly after the insured's death, she executed a written assignment in favor of Geddes & Moss Undertaking and Embalming Company, Ltd., of all of her right, title and interest in and to the policy proceeds. The circumstances surrounding the giving of this assignment are as follows:

After Matthews' death, his body was placed in the custody of Geddes & Moss Undertaking and Embalming Company, Ltd., for burial purposes and that company, through its representative, contacted Bessie Walker for the purpose of ascertaining whether she would be willing to be responsible for the funeral expenses. She readily agreed to do so and, in order to protect the undertaking company for the amount of its bill and for any advances which it might make to her or for her account, she executed in its favor an absolute assignment by which she purported to convey all of her right, title and interest in the policy in contest "in consideration of the funeral services performed and materials furnished, and monies advanced in connection with the funeral of the late Rogers Matthews."

It is the contention of counsel for Bessie Walker that, while the assignment of her interest in and to the avails of the insurance is absolute, the transfer was made solely for the purpose of securing to the undertaking company the funeral bill of Rogers Matthews and such other cash advances which might have been made by it for her account.

Contra, the undertaking company maintains that the written assignment is full proof of what was intended by the parties and that parol evidence is inadmissible to alter, vary or contradict the unambiguous language used therein. Its counsel relies upon our recent holding in Life Insurance Company of Virginia v. Saucier et al. (Geddes & Moss Undertaking & Embalming Company, Ltd., intervener) 169 So. 96, where we recognized the validity of an absolute assignment, which was couched in the same language as the one now under consideration, as decisive of the question.

Counsel for Bessie Walker argue that the Saucier case is clearly distinguishable from the instant one and they assert that it is well recognized in the jurisprudence that parol evidence may always be admitted to show that a written assignment of an insurance policy, which is unambiguous and absolute in form, was not intended as such but was in fact given by the assignor as collateral security for a debt. The following authorities are cited in support of the proposition: Jordan v. New York Life Insurance Co., La.App., 150 So. 419; Page v. Burnstine, 102 U.S. 664, 26 L.Ed. 268; Mutual Life Insurance Company, Inc. v. Houchins et al., 52 La.Ann. 1137, 1144, 27 So. 657; Allen v. Home National Bank, 120 Conn. 306, 180 A. 498, Vance on Insurance, 2d Ed., page 644, 6 Couch, Insurance, page 5256, and 7 Cooley, Briefs on Insurance, 2d Ed., page 6525.

In the Saucier case, it appeared that the policy proceeds assigned amounted to $78 whereas the bill of the undertaker was $94. At the time of the execution of the assignment, neither party thereto knew that there were certain dividends due to the beneficiary which, when added to the face value of the policy, increased the liability of the insurer to $144.10. There, we found that not only was the assignment absolute on its face but that the parties did not intend to regard it as collateral security for the funeral debt. We did not hold that parol evidence was inadmissible to show the true intent of the parties. On the contrary, we found that the proof submitted was sufficient to warrant a conclusion that the assignment was an absolute conveyance.

■ On the other hand, the authorities cited by counsel for Bessie Walker are squarely in point and sustain the contention that the courts, in order to ascertain the real intent of the parties, will permit the assignor to show by parol testimony that an assignment absolute on its face was given to secure a debt notwithstanding that the evidence tendered is contrary to the

clear and unambiguous language employed therein. See, also, 20 American Jurisprudence, Evidence, Section 1146.

The evidence submitted by Bessie Walker, with respect to her contention that the assignment was given for the purpose of securing her debts to the undertaking company and not as an absolute transfer of her rights to the insurance proceeds, has not been controverted. In fact, Jesse ˙Cook, bookkeeper for the undertaker, admits in his testimony that not only is it the custom of his company, in taking assignments from beneficiaries on insurance policies, to refund any excess over and above the indebtedness due by the assignor, but that it was the company's intention in the instant case to deliver any such excess to Bessie Walker. Albeit, the main contention of the undertaking company relates to the amount of its advances and it maintains that, in addition to its funeral bill and cash actually advanced, it should also be permitted to recover other sums which it has contracted to disburse to certain creditors of Bessie Walker at her request.

It is admitted by Bessie Walker that she owes the undertaking company the sum of $270 which is made up of the following items: funeral $215; $15 for a wake held for the deceased; cash advanced to her $15; cash advanced to A. J. Hollander at her request $25. It is likewise admitted by the undertaking company that it has collected on policies assigned to it by Bessie Walker (other than the one now in contest) the sum of $200, thus leaving a balance due to it of $70.

Since it must be conceded that the undertaking company is entitled to recognition of a lien on the insurance proceeds to the extent of $70, the question arises as to whether it has a lien for the additional sum of $233 which it agreed to pay to certain ordinary creditors of Bessie Walker at such time as the insurance money was collected.

The evidence shows that, after the insured's death, Bessie Walker was arrested by the police and charged with the murder of Rogers Matthews. While she was incarcerated in the Parish Prison, she employed Mr. A. J. Hollander as her counsel and agreed to pay him a fee of $250 for the services he would render in handling her case. Her brother paid Mr. Hollander $7 on account of this fee and the undertaking company also gave him $25, making a total payment of $32 on account and leaving a balance due of $218. In addition to the cash paid to Mr. Hollander, Bessie Walker, in order to obtain his services, authorized and caused the undertaking company to write him a letter on the day of her arrest whereby it agreed that, as soon as collection was made on the policy now in contest (which had been assigned to it by Bessie Walker), it would pay to him any balance which might be due on his $250 fee out of the insurance proceeds. Later on February 8, 1938, the undertaking company, at the request of Bessie Walker, wrote a letter to her landlord, Mr. John Kenny, to whom she was indebted in the sum of $15 for rent, advising him that it would undertake to pay him the amount of her indebtedness as soon as collection of the policies assigned to it was effected.

The undertaking company takes the position that, if the court should restrict its recovery to the indebtedness for which the absolute assignment was given, then, in such case, it should receive not only full payment for the funeral expenses and reimbursement for cash advanced but that it is also entitled to be awarded a sum sufficient to discharge the debts owed Messrs. Hollander and Kenny by Bessie Walker since it has ˙obligated itself to pay these debts at the assignor's request and direction.

■ Bessie Walker resists this demand maintaining that the language used in the assignment clearly shows that she is liable only for the funeral bill and for cash actually advanced by the undertaker. Thus, we discern that she attempts to shift her position and rely upon the concise wording of the assignment notwithstanding her previous contention that it was given by her merely as collateral security for her indebtedness to the undertaking company. We cannot permit this to be done. The language of the document is now unimportant and the parol testimony must control. An examination of the evidence has been sufficient to convince us that Bessie Walker intended that the assignee would pay the debts to Hollander and Kenny out of the insurance proceeds.

■ It is true that the undertaking company only agreed with Messrs. Hollander and Kenny to pay them at such time when the insurance proceeds were received and there may be some doubt as to whether these creditors of Bessie Walker could successfully maintain an action to enforce the assignee's promise to them. Be this as it

may, the company should be made whole and not forced to defend an action in court by these creditors of Bessie Walker who extended credit to her upon the assurances of the assignee. It is not only certain that Bessie Walker is impecunious and that Hollander and Kenny look to the undertaking company for payment of the debts but her defense in this case evinces an intention on her part to evade just obligations contracted by her at a time when she contemplated that her assignee had an absolute right to all of the insurance proceeds. Undoubtedly, the ordinary creditors of Bessie Walker have no interest in these proceedings and are without right to receive any portion of the proceeds she now seeks to obtain. See In re Employers' Liability Assurance Corp., 180 La. 406, 156 So. 447. But the undertaking company is admittedly in a different position. She has assigned to it all of her right, title and interest in the insurance for a valuable consideration and upon her showing that the assignment was executed as collateral security for her debts, it is entitled to recover not only the funeral bill and cash advanced by it for her account but also for the commitments made by it to her creditors on her behalf and at her request.

We finally direct our attention to the intervention of Mr. A. J. Hollander. Mr. Hollander is merely an ordinary creditor of Bessie Walker and is without interest in the insurance proceeds. His intervention must therefore be dismissed under the authority of In re Employers' Liability Assurance Corp., supra.

For the reasons assigned, the judgment appealed from, insofar as it recognizes the claim of Richard Matthews and discharges the Sun Life Assurance Company of Canada from any further liability under the insurance policy and dismisses the intervention of Johney Baker and Hattie Washington, is affirmed.

The judgment in favor of Henrietta Madison is reversed and it is now ordered that her intervention be dismissed at her cost.

The judgment in favor of Bessie Walker for the sum of $150 less $22.50 court costs is amended by increasing the amount thereof to $197 and, as thus amended, it is affirmed.

The judgment in favor of Geddes & Moss Undertaking and Embalming Company, Ltd., is amended by increasing the amount thereof from $50 to $303 and, as thus amended, it is affirmed. The costs of court incurred by Geddes & Moss Undertaking and Embalming Company, Ltd., to be paid by Bessie Walker out of her portion of the fund in the registry of the court.

Amended and affirmed in part.

Reversed in part.